NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DENNIS HICKS, | : | |
| | : | |
| Petitioner, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 04-3393 (WHW) |
| | : | |
| DEVON BROWN, et al. | : | |
| | : | |
| Respondents. | : | |

**Walls, Senior District Judge**

　　This matter is before the Court on petitioner, Dennis Hicks', application for habeas corpus relief under 28 U.S.C. §2254. Petitioner is represented by counsel. Pursuant to Fed. R. Civ. P. 78, petitioner's motion is decided without oral argument. The petition for habeas relief is denied.

　　**I.     FACTS AND PROCEDURAL BACKGROUND**

　　In a three count indictment filed in Essex County, petitioner Dennis Hicks ("petitioner"), was charged with first degree murder, third degree unlawful possession of a weapon, and second degree possession of a weapon for an unlawful purpose.

　　The evidence presented at the Superior Court trial came from four eyewitnesses, one of whom testified that he saw the petitioner murder the victim, one of whom testified that he saw the petitioner running with a gun in the area after shots were fired, and two of whom saw the defendant walking behind the victim just before the murder. On February 5, 2002, a jury found petitioner not guilty of murder, but guilty with respect to both weapons charges. On March 22,

**NOT FOR PUBLICATION**

2002, petitioner was sentenced to ten years in prison with five years minimum parole ineligibility. Petitioner is currently in custody.

Petitioner appealed his conviction. On April 7, 2003, the Appellate Division of the Superior Court of New Jersey affirmed the jury verdict. The New Jersey Supreme Court denied certification on July 21, 2003 without comment. Petitioner filed this federal habeas petition on July 16, 2004. The respondent answered the petition on August 31, 2006.

Petitioner asserts four grounds in support of his petition for habeas relief. First, he argues that in light of his acquittal of the murder charge, there was insufficient evidence to convict him of the weapons charges. Second, he maintains that he was denied a fair trial because the trial court failed to provide the jury with the model jury charge on prior contradictory statements. He also alleges the trial was unfair because the trial court improperly marshaled facts on the key issue of identification. Finally, petitioner asserts that he is entitled to habeas relief because the trial court did not require the State to reveal whether a State's witness was in violation of reporting requirements under Megan's Law related to a prior convictions for sexual assault. Petitioner also argues that defense counsel should have been allowed to extensively cross-examine the witness with respect to whether the witness was currently violating Megan's Law. Petitioner asserts that the State's witness may have been was acting as an informant for the State so as to avoid prosecution for failure to comply with Megan's Law.[1]

**II.   LEGAL STANDARD**

---

[1] Respondent dos not challenge Hicks' petition on procedural grounds, and the Court notes that the petition was filed within the 1-year time limit imposed by 28 U.S.C. §2244(d) and that petitioner exhausted all four claims in his state appeals.

-2-

**NOT FOR PUBLICATION**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. §2254. For any petitions filed after the effective date of AEDPA – April 24, 1996 – courts are required to apply the amended standards of AEDPA. See Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000), (citing Lindh v. Murphy, 521 U.S. 320, 336 (1997)).

Under 28 U.S.C. §2254, a federal district court may consider applications on behalf of petitioners in custody pursuant to the judgment of a state court. 28 U.S.C. §2254(a). Under this statute, courts may only consider applications grounded on an argument that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." Id. Moreover, the petitioner must "exhaust" all of his claims in state court before coming to federal court. See 28 U.S.C. §2254(b) (1997); Werts, 228 F.3d at 192.

AEDPA increases the deference federal courts must give to factual findings and legal determinations of the state courts. See Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). As interpreted by the Supreme Court's landmark case, Williams v. Taylor, 529 U.S. 362 (2000), federal habeas relief under 28 U.S.C. §2254 is denied as to any claim that was adjudicated on the merits in a state court proceeding, unless such application:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Williams, 529 U.S. at 412-13 (citing 28 U.S.C. §2254(d)(1)); 28 U.S.C. §2254(d)(2).

NOT FOR PUBLICATION

Under 28 U.S.C. §2254(d)(1), the federal habeas court must first determine whether the state court decision was "contrary to" Supreme Court precedent. See Keller v. Larkins, 251 F.3d 408, 417-18 (3d Cir. 2001). A decision is "contrary to" Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. In the absence of such a showing, the federal court must ask whether the state court decision represents an unreasonable application of Supreme Court precedent. Id. at 404 (holding that "contrary to" and "unreasonable application of" govern two distinct categories of cases). The appropriate inquiry to be made under the "unreasonable application of" standard is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409-10. An incorrect application alone does not warrant relief.

The second prong requires the petitioner show that the state court decision was based on an unreasonable determination of facts in light of the evidence presented at trial or at a hearing. 28 U.S.C. §2254(d)(2). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. §2254(e)(1)).

**III.    DISCUSSION**

    **A.    Sufficiency of Evidence**

Petitioner provides four grounds in support of his motion for habeas relief. First, he argues that his conviction for possession of a handgun for an unlawful purpose was "obtained

**NOT FOR PUBLICATION**

unconstitutionally because the State filed [sic] to produce evidence beyond a reasonable doubt as to petitioner's 'unlawful purpose' in possessing the weapon." (Habeas Pet. at 5).  To obtain a conviction for possession of a handgun for an unlawful purpose under N.J.S.A. 2C: 39-4a, the State must prove four elements: (1) the item possessed was a firearm; (2) defendant possessed the firearm; (3) defendant's purpose in possessing the firearm was to use it against the person or property of another; and (4) defendant intended to use the firearm in a manner that was unlawful.  State v. Camacho, 153 N.J. 54, 68 (1998).  To be convicted of possession of a handgun for an unlawful purpose under this statute, the State need not obtain a conviction for the unlawful conduct underlying the third and fourth elements.  State v. Diaz, 144 N.J. 628, 636 (1996).  But, the state must prove that the defendant had the unlawful purpose at the time he possessed the weapon.  State v. Petties, 139 N.J. 310, 315 (1995).  The jury instruction must identify the unlawful purpose suggested by the evidence and relied upon by the state.  State v. Jenkins, 234 N.J. Super. 311, 316 (App. Div. 1989).

In arguing that his conviction was not supported by sufficient evidence, petitioner focuses on the relationship between his acquittal on the murder charge and conviction on the weapons charges.  He asserts that the jury could not have found sufficient evidence that he possessed a gun for an unlawful purpose because the unlawful purpose identified by the state was murder and the jury acquitted him of murder.  In other words, if the evidence was insufficient to prove that petitioner committed the murder, that same evidence could not support the finding that petitioner possessed a gun with the purpose of committing murder.

**NOT FOR PUBLICATION**

This Court starts its analysis by noting that the petition is largely styled after petitioner's direct appeal. On appeal, petitioner argued, inter alia, that under state law the acquittal of the accompanying charge (murder) erases the identification of the unlawful purpose (murder). The Appellate Division rejected this argument.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A state court's misapplication of its own law generally does not raise a claim appropriate for habeas review by a federal court. See, e.g., Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997). Only where a state court's application of its own law also results in a violation of the Constitution or laws or treaties of the United States may a federal court intervene. See 28 U.S.C. § 2254(a); Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997). Accordingly, this Court will not consider whether the New Jersey State courts erred in determining on state law grounds that the conviction need not be reversed. It will, however, consider any of petitioner's arguments that implicate the violation of federal law.

Having lost in state court on the argument that the verdicts were impermissibly inconsistent under state law, petitioner appears to maintain that such inconsistency is also impermissible under federal law. On this matter, the Supreme Court has spoken in unequivocal terms: federal law does not create the right to overturn a conviction forming part of a jury verdict on the basis that it is inconsistent with an accompanying acquittal. United States v. Powell, 469 U.S. 57 (1984); Harris v. Rivera, 454 U.S. 339, 345-46 (1981) (defendant could not obtain relief by writ of habeas corpus on the basis of inconsistent verdicts).

**NOT FOR PUBLICATION**

However, apart from this inconsistency argument, the petition may be read as arguing simply that petitioner's conviction was based upon insufficient evidence.  This assertion does invoke a federal right – a defendant's entitlement to due process under the 14th amendment.  Jackson v. Virginia, 443 U.S. 307 (1979).  In evaluating a petitioner's claim that the evidence was not sufficient to support his conviction, the Court conducts its analysis under 28 U.S.C. §2254(d)(1): The petition may only be granted if the adjudication of his case by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  See, e.g., Sarausad v. Porter, 479 F.3d 671, 677-78 (9th Cir. 2007) (agreeing with Seventh, Sixth, Second, and First Circuits that §2254(d)(1) applies to Jackson claims); see also Negron v. Rosemeyer, No. 06-1507, 2007 WL 756737, at *3 (E.D.Pa. March 7, 2007) (applying §2254(d)(1) to Jackson claim); Christina v. Klem, Civ. No. 05-1669, 2007 WL 1780146 at *2 (3d Cir. 2007) (analysis suggesting Third Circuit would apply §2254(d)(1)).

The first question is whether the state court determination was "contrary to [] clearly established federal law, as determined by the Supreme Court of the United States."  Keller, 251 F.3d at 417-18 (quoting 28 U.S.C. §2254).  A decision is "contrary to" Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412-13.

The federal law with respect to sufficiency of evidence was clearly established by the Supreme Court in Jackson v. Virginia, 443 U.S. 307.  On a defendant's challenge that his

**NOT FOR PUBLICATION**

conviction was not supported by sufficient evidence, a court must determine: "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Put in the habeas context, then, this Court must determine whether the state court applied the proper standard from Jackson and whether its application of such standard was "unreasonable." 28 U.S.C. §2254.

In assessing petitioner's claims, the Appellate Division held that "[i]f there were sufficient evidence present in the record as a whole to establish beyond a reasonable doubt that before any shots were fired, defendant possessed the handgun for the purpose of shooting Sumo, then the verdict is sustainable." State of New Jersey v. Hicks, No. A-3731-01T1, at *9 (App. Div. April 7, 2003) ("App. Div. Op."). It identified the relevant question as "whether the jury could have lawfully determined, based on the evidence, that [] defendant [] possessed the handgun on the Newark street with the purpose of shooting Sumo sometime before the shots were fired," and found that "the evidence was sufficient for the jury to reach that determination." Id. at 8. In support of this standard, the Appellate Division cited State v. Kamienski, 254 N.J. Super. 75 (App. Div. 1992), which in turn cites Jackson.

Petitioner does not allege that this standard was contrary to federal law and this Court finds that the state court applied a standard sufficiently similar to Jackson. On this point of law, the state court's decision certainly was not "contrary to" – "diametrically different" from, "opposite in character of nature," from or "mutually opposed to" – the Supreme Court's precedent. Williams, 529 U.S. at 406. See Negron, 2007 WL 756737, at *3 ('contrary to'

**NOT FOR PUBLICATION**

provision does not provide a basis for habeas relief because review of the record "demonstrates that the state court applied a sufficiency of the evidence standard that is indistinguishable form the standard [] in Jackson").

Because petitioner points to no Supreme Court precedent decided on a materially indistinguishable set of facts, the only remaining question under 28 U.S.C. §2254(d)(1) is whether the state court decision constituted an "unreasonable application of" this standard. Williams, 529 U.S. at 409-10.  For relief under this provision, the court's application must be more than incorrect; it must be "objectively unreasonable."  Id.  Four witnesses testified to seeing petitioner in the area at the time of the murder: two saw him walking in the same direction as the victim, one testified to seeing petitioner running with a gun in hand after gunshots were fired, and one testified to witnessing the petitioner commit the murder.  App. Div. Op., at 2-4; Tr. 5T 24:2-10.  In light of this evidence, this Court does not find "objectively unreasonable" the state court's finding that a rationale jury could find, beyond a reasonable doubt, all elements of the gun possession offense.

    **B.**    **Trial Court's Omission of Specific Instruction on Prior Inconsistent Statements**

Second, petitioner asserts that the conviction was obtained in violation of his right to a fair trial because the trial judge failed to provide a specific instruction on prior inconsistent statements, despite petitioner's specific request for such an instruction.

The trial judge did not provide a specific charge concerning prior inconsistent statements, but did provide a general credibility charge.  That charge read, in part:

> As judges of the facts you're to determine the credibility or the believability of witnesses.  And in determining whether a witness is worthy of belief and therefore credible, you may take into consideration certain criteria.  These include . . . .His

**NOT FOR PUBLICATION**

> or her ability to reason, observe, recollect or relate. . . . If the witness testified with
> an intent to deceive you . . . . and any and all other matters in the evidence which
> may either serve to support or discredit his or her testimony.

(Tr. 5T, 19:4 to 20:5).  The court also instructed, with respect to witness identifications, that the jury could consider "any discrepancy or inconsistencies between identifications."  (Tr. 5T, 26:10-11).  Both before and after the trial court charged the jury, defense counsel asked whether the judge would or had given a charge on prior inconsistent statements.  Both times the trial judge informed counsel that prior inconsistent statements were covered by the general credibility charge.  (5T, 44:13 - 15); (3T, 133:3-5).

The Appellate Division provided a brief discussion of this argument.  First, the court discussed the alleged inconsistencies provided by one of the witnesses – Hasaan Shabazz.  The court noted that Shabazz did "not provide different versions of the critical events he observed," and that "all of the alleged inconsistencies were not substantially different from Shabazz's prior statements."  The Appellate Division concluded, "[t]hus, it was not necessary to include a full instruction, including the substantive use of prior inconsistent statements."  App. Div. Op. at 10.  Moreover, the court stated that "even if it were necessary to provide a full inconsistent statement instruction, we cannot say that its absence was prejudicial to defendant."  App. Div. Op. at 10-11.

Once again, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67-68.  "Questions related to jury charges are normally matters of state law and are not cognizable in federal habeas review."  Paulino v. Ortiz, Civ. No. 03-4463, 2005 WL 2922369, at *4 (D.N.J. Nov. 4, 2005).  However, a habeas claim will lie where "the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness."  Id. at *4 (quotations omitted).  The relevant question on

-10-

**NOT FOR PUBLICATION**

federal habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process. . . .not merely whether the instruction is undesireable, erroneous, or even universally condemned." Jacobs v. Horn, 395 F.3d 92, 111 (3d Cir. 2005) (citations omitted). "[A] single instruction to the jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." Id. (citations omitted). Moreover, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Finally, "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." Id. at 155.

This Court does not find that the trial court's failure to provide a specific instruction on prior inconsistent statements "so infected the entire trial that the resulting conviction violated due process." See Jacobs, 395 F.3d at 111. The trial court's general credibility charge instructed the jury to consider a witness' ability to "recollect," "intent to deceive," and "any and all other matters in the evidence which may either serve to support or discredit his or her testimony." (Tr. 5T, 19:4 to 20:5). This general instruction encompassed the idea that a witness' credibility could be discounted as a result on inconsistent statements, whether resulting from a failure to recollect or an intent to deceive. Petitioner fails to point to any federal requirement that the specific credibility charge be provided in this instance. Given the content of the general charge, and considering the evidence presented in the trial, this Court does not find that the absence of a specific instruction on prior inconsistent statement so infected the trial with unfairness as to amount to a violation of due process. See Paulino, 2005 WL 2922369, at *6 (where court

**NOT FOR PUBLICATION**

provided general credibility charge, lack of specific instruction on prior inconsistent statements did not warrant habeas relief). The Appellate Division correctly held that a full instruction was not necessary. App. Div. Op. At 10. Accordingly, petitioner's claim that he was denied a fair trial due to the lack of this specific instruction fails on the merits.

      C.      **Trial Court's Marshaling of Evidence**

Petitioner argues that he was denied a fair trial because the trial court informed the jury that there were multiple identifications of the petitioner and provided specific details of the witnesses' testimony including only those aspects of the testimony that were favorable to the state's case and ignoring inconsistencies between the witnesses' statements. Petitioner takes issue with the following instruction:

> The State has presented the testimony of Craig Hargrove who testified that he saw the defendant doing the shooting; Hasaan Shabazz, who testified that the defendant was in the area with a gun after the shooting; and Reeshemah Watkins and Thomas Berry who testified that the defendant was in the area just before the shooting.

(Tr. 5T, 24:2-10.)

When petitioner's attorney objected to this instruction, the trial judge explained that he was adding detail so as to avoid misleading the jury into thinking that all the witnesses identified the defendant as having committed the offense. (4T 50:5-17). The court explained that the model jury charge instructs the jury that these witnesses identified the defendant in court as the person who committed the offense. (Id.) Since only one of the witnesses testified that he actually saw the defendant shoot the victim, the trial judge tailored the instruction in order to provide an accurate summary of the testimony. (Id.)

Here, as above, the relevant standard is whether the petitioner can show that "the suspect instruction so infected the entire trial such that the resulting conviction violates due process."

**NOT FOR PUBLICATION**

Reese v. Greiner, Civ. No. 97-5622, 2003 WL 21459577, at *3 (S.D.N.Y. June 23, 2003) (applying this standard to petitioner's argument that court improperly marshaled evidence in jury charge) (quotations omitted).  This Court does not find that such an instruction infected the entire trial.  To the contrary, the trial judge's decision to tailor the model instruction helped ensure that the jury would not, mistakenly, believe that all the witnesses testified to having witnessed the defendant commit murder – the most serious crime charged and the crime of which defendant was acquitted.

        **D.**        **Determination of Whether State's Witness Was in Violation of Megan's Law**

Petitioner argues that he was denied a fair trial because his attorney was unable to determine whether one of the State's witnesses – Hasaan Shabazz – was in violation of Megan's Law.  Shabazz had been convicted of two sex offenses, the most recent of which was nineteen years before the trial.  The trial judge deemed those convictions too remote for impeachment purposes.  (Tr. 2T, 11).  Petitioner argues that either the court should have required the State to provide information regarding Shabazz's reporting requirements under Megan's Law or should have allowed petitioner's attorney to extensively question the witness regarding his reporting requirements.

At the trial, defense counsel informed the Court that he believed Shabazz was an informant for the State and that the State was looking the other way with respect to violations of Megan's Law reporting requirements in exchange for Shabazz's assistance.  Defense counsel indicated on the record that he asked the prosecutor whether Shabazz was an informant and was told that Shabazz was not an informant on the State or local level.  (Tr. 2T, 18:8 to 19:3).  Defense counsel then expressed his belief, notwithstanding the State's representations, that

-13-

**NOT FOR PUBLICATION**

Shabazz was biased as a result of some agreement with the prosecutor's office or the Newark Police Department. (Id. at 19:5 to 20:7). Counsel acknowledged, however, that he had no proof of this allegation. (Id. at 20:9). The trial judge agreed to allow the defense attorney to ask Shabazz some questions regarding this assertion out of the presence of the jury, but warned that he would not allow a "trial within a trial" regarding the issue of whether Shabazz was required to report under Megan's Law. (Id. at 25:25).

As demonstrated on the record, there were numerous open questions concerning whether Shabazz would have been required to report under Megan's Law for the earlier sex offenses. The trial judge allowed counsel to ask the following questions of Shabazz, without the jury present:

> Q. I represent Mr. Hicks. [] Have you ever been promised that you would not be prosecuted for failing to comply with Megan's Law in exchange for providing information to the Newark Police Department, the Essex County Prosecutor's Office, the F.B.I., the Attorney General's Office, any law enforcement agency, municipal, state, local, whatever, have you ever received any promises that you would not be prosecuted in exchange for providing that type of information?
> A. No.
> Q. And have you ever been an informant for any law enforcement agency?
> A. No.
> Q. Paid informant or otherwise or promises?
> A. No.

(Tr. 2T, 38:1-16).

The trial court did not then permit defense counsel to ask about potential Megan's Law violations in front of the jury, but during cross-examination defense counsel was able to ask Shabazz if he was an informant:

> Q. Now, Mr. Shabazz, have you ever been an informant for a law enforcement agency of any type, State, Federal, local, any?
> A. No, I haven't.
> Q. You've never been a paid informant?
> A. No.
> Q. You've never received any favors in exchange for providing information?
> A. No.

-14-

**NOT FOR PUBLICATION**

(Tr. 2T, 58:20 to 59:3).

Apart from stating that he was denied a fair trial, petitioner does not explain exactly what federal rights were violated by the state court's conduct. At best, the Court finds that petitioner is alleging either or both (1) that the trial court's restriction on defense counsel's ability to extensively question Shabazz about whether he was in violation of the Megan's Law reporting requirements violated petitioner's rights under the Confrontation Clause of the Sixth Amendment, and/or (2) that the State withheld exculpatory evidence – namely that Shabazz was an informant – in violation of petitioner's rights under Brady v. Maryland, 373 U.S. 83 (1963).[2]

In Delaware v. Van Arsdall, the Supreme Court discussed the ability of a trial court to limit cross-examination without violating the Confrontation Clause:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limitations on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant.

475 U.S. 673, 679 (1986). Following this guidance, lower courts have justified "limitations on cross-examinations into subjects for which there is no proper foundation." Searcy v. Jaimet, 332 F.3d 1081, 1090 (7th Cir. 2003). Moreover, "it is well established that purely conjectural or speculative cross-examination is neither reasonable nor appropriate." Id. at 1088.

Here, counsel was not denied the opportunity to cross-examine Shabazz nor was he denied the opportunity to ask Shabazz if he was working as an informant. What the trial Judge did not allow was cross-examination concerning the possibility that Shabazz was violating

---

[2] Under Giglio v. U.S., 405 U.S. 150 (1972), impeachment evidence is exculpatory evidence within the meaning of Brady.

**NOT FOR PUBLICATION**

reporting requirements under Megan's Law.  As excerpted above, the Court allowed defense counsel to inquire, away from the jury, as to whether Shabazz had been promised that he would not be prosecuted for any violations of Megan's Law and as to whether he was an informant.  He responded 'no' to both inquiries.  There is no evidence on the record that Shabazz was the subject of any investigation concerning Megan's Law violations, nor was it ever established that he would have been subject to the reporting requirements under Megan's Law.  This is not a case where evidence shows that the witness was under investigation in connection with the crime on trial or any other crime.  Rather, defense counsel merely speculated that Shabazz may have been violating a law that may have been applicable to him.  The trial judge was acting well-within the "wide latitude" afforded trial courts to impose reasonable limitations on such cross-examination. Van Arsdall, 475 U.S. at 679.  Accordingly, this Court does not find that the New Jersey Courts acted contrary to, or unreasonably applied Supreme Court precedent.

      It is not clear that petitioner presented a Brady claim in his direct appeal or that he attempts to do so here.  However, petitioner indicates that he believes his trial was unfair because defense counsel was prevented from discovering exculpatory evidence – namely that Shabazz was a government informant.  Even if petitioner did properly raise a Brady claim, his argument fails on the merits.

      To prevail under Brady, a petitioner must demonstrate: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the state, either wilfully or inadvertently; and (3) prejudice ensued. Banks v. Dretke, 540 U.S. 668, 691 (2004).

**NOT FOR PUBLICATION**

Any claim under Brady fails here because petitioner has provided nothing but speculation that Shabazz was an informant for the State.  Indeed, there is no evidence proving that Shabazz was required to report under Megan's Law, that City or County officials knew he failed to comply, or that Shabazz received any favors from any government official for providing information or for his testimony.  Defense counsel asked both the prosecutor and the Shabazz whether Shabazz was an informant and both responded that he was not.   In the absence of any evidence to the contrary, the assertion that exculpatory evidence was withheld is nothing but speculation.  Speculation that exculpatory evidence existed is an insufficient basis for habeas relief under Brady.  See, e.g., Medellin v. Dretke, 371 F.3d 270, 281 (5th Cir. 2004) (where petitioner demonstrated only that witness received assistance from employee in prosecutor's office in obtaining lawyer and that charges against witness were later dropped, no relief was warranted under Brady because "[a]n applicant's speculation about the suppression of exculpatory evidence is an insufficient basis to support a Brady claim."); Mallet v. Miller, 432 F.Supp.2d 366, 378 (S.D.N.Y. 2006) ("mere speculation that exculpatory evidence was withheld is not sufficient under Brady and the Court cannot compel the production of evidence that is not known to exist.").

### IV. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253, a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473 (2000); United States v. Cepero, 224 F.3d 256, 262-64 (3d Cir. 2000) (en banc).  This requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

**NOT FOR PUBLICATION**

different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot v. Estelle, 463 U.S. 880, 8994 (1983) (internal quotation marks and citation omitted).

For the reasons stated in this opinion, petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253. Accordingly, a certificate of appealability shall not be issued.

### CONCLUSION

For the preceding reasons, petitioner's request for relief pursuant to 28 U.S.C. §2254 is DENIED. A certificate of appealability shall not issue.

**s/William H. Walls**  
United States Senior District Judge

**Appearances**

Attorney for Petitioner
Randy P. Davenport

Attorneys for Respondent
Paula T. Dow, Essex County Prosecutor
Maryann K. Lynch, Assistant Prosecutor, Appellate Section